```
            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )      8:05CR256
                               )
      v.                       )
                               )
RICKY T. MCCOLLUM,             )      REPORT, RECOMMENDATION,
                               )             AND ORDER
              Defendant.       )
                               )
```

The defendant has moved to suppress "all evidence and statements gained by means of the unlawful search of his person and residence by law enforcement officers." Filing 29. The defendant claims his residence was searched without his consent, and the warrant to conduct the search was overbroad and not supported by a valid probable cause finding. The defendant claims the search and seizure violated his rights under the Fourth, Fifth, and Fourteenth Amendments.[1] The government has failed to respond to the motion.

---

[1] The basis for defendant's Fourteenth Amendment claim is unclear and not addressed in his brief. I nonetheless note there is no evidentiary showing to support a claim of selective enforcement or prosecution in violation of the Fourteenth Amendment. Without this threshold showing, the defendant is not entitled to an evidentiary hearing on any alleged denial of Equal Protection in violation of the Fourteenth Amendment. See e.g. United States v. Perry, 152 F.3d 900, 903 (8th Cir. 1998); United States v. Kelley, 152 F.3d 881, 885 (8th Cir. 1998).
      The defendant's alleged Fifth Amendment claim is also unclear. The motion seeks suppression of defendant's statements as fruit of an allegedly illegal search. The defendant's brief, however, discusses alleged Fifth Amendment due process and Miranda violations regarding statements obtained after a June 28, 2005 traffic stop and his arrest pursuant to a warrant. This report and recommendation does not address the application of the Fifth Amendment to the statements made by the defendant following his arrest. Rather, it is limited to resolving the motion as filed.

The defendant has presented a facial challenge to the issuance and content of a search warrant. In accordance with my November 15, 2005 order (filing 31), the defendant has filed a copy of the June 27, 2005 search warrant application, supporting affidavit, and warrant issued by Magistrate Judge Thomas D. Thalken. The affidavit, application, and warrant each provide the defendant's specific residential and business address in Plattsmouth, Nebraska to be searched.

The warrant was issued based on the warrant application and affidavit of Clay M. Nolte, a Special Agent for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) who was the case agent investigating the defendant and his business, McCollum's Green Hollow Gun Works, for violating federal firearms laws. Filing 39 (affidavit) at p. 1 ¶¶ 1-2, 24.

The defendant's motion does not challenge the truthfulness of the facts included in Special Agent Nolte's affidavit, nor does the motion state that material facts were concealed from the issuing judge. However, read liberally, the defendant does argue that contrary to the affidavit, as of the time of the warrant application, McCollum was not a federal firearms license holder; and the affidavit fails to include the government's two unsuccessful attempts to entrap the defendant to sell or repair a firearm in exchange for drugs. Filing 30 (defendant's brief) at p. 3-4. Therefore, I shall first evaluate the affidavit, application, and warrant on their face. I shall then evaluate these documents under the standard set forth in <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

STATEMENT OF FACTS

Agent Nolte has been an ATF Special Agent for six years, and in the course of his investigation of the defendant, obtained information from Cass County Narcotics Detective Matt Watson ("Detective Watson") who conducted a proffer interview of Michael D. Moore ("Moore"). Special Agent Nolte also personally interviewed Rashell Roth ("Roth") and Michael Andrews ("Andrews"), and he both interviewed and monitored the communications of ATF Confidential Informant CI-1048. The information set forth in Special Agent Nolte's June 27. 2005 application and affidavit is derived from these sources and includes the following:

During a December 6, 2004 interview, Moore told Detective Watson that Moore, Andrews, and McCollum all used methamphetamine while together at Andrews' residence in 2003. Moore stated that he saw Andrews giving McCollum methamphetamine and heard Andrews state the methamphetamine was for the high-powered rifle McCollum was building for Andrews. Filing 39 (affidavit) at p. 2 ¶ 3.

During a proffer interview on January 7, 2005 Moore told Detective Watson that Moore knew McCollum was building a high-powered rifle for Andrews, thought it was a .43 or a 306, and believed McCollum was building it piece-by-piece, with a separately purchased barrel and a handcrafted wood stock. Filing 39 (affidavit) at p. 3 ¶ 4.

During an April 27, 2005 proffer interview of Roth, Roth told Special Agent Nolte that McCollum had provided a .22 caliber rifle to Andrews for Roth's use, and between March and September 2003, McCollum built a deer rifle for Andrews in exchange for

3

$200 in cash and four grams of methamphetamine, for a total price of $700.  Roth further stated that she and Andrews thereafter continued to deliver methamphetamine to McCollum and Wendy Mather, McCollum's live-in girlfriend.  Roth accurately described McCollum's residence and admitted she smoked methamphetamine with McCollum and Mather approximately ten to twelve times, the last time being approximately February 25, 2005, about two weeks before her arrest.  Filing 39 (affidavit) at p. 3 ¶ 5.

During a May 9, 2005 proffer interview of Andrews conducted by Special Agent Nolte, Andrews stated:

- Andrews placed an order with McCollum for the manufacture of a .243 caliber high-powered rifle, normally valued at $1200 to $1500.  McCollum agreed to sell the rifle to Andrews in exchange for $900 and a set of bluing tanks.  Eight months lapsed between the order and fall 2003 delivery of the rifle, and during that period, Andrews gave McCollum $300 in cash and a total of a quarter ounce of methamphetamine, valued at approximately $600, as payment for the rifle.  Mccollum initially accepted cash payments for the rifle, but later wanted payment in methamphetamine rather than cash.  Andrews supplied the methamphetamine to McCollum or Mather in half-gram increments, and McCollum either delivered the methamphetamine to Andrew's residence, or Andrews picked it up at McCollum's shop or home.  The value of the methamphetamine supplied by Andrews was subtracted from the balance he owed McCollum for the gun, and Andrews obtained and kept receipts for his cash and methamphetamine payments to McCollum.  Filing 39 (affidavit) at p. 4-5 ¶¶ 5-11.

- Andrews, Roth, McCollum, and Mather smoked methamphetamine together on several occasions, the last time being at Andrews' residence in mid-February of 2005.  McCollum and Mather arrived there in a three-wheeler chopper motorcycle.  Filing 39 (affidavit) at p. 5 ¶ 12.

4

- Andrews delivered at least a total of one-half ounce of methamphetamine to McCollum or Mather after Andrews received the rifle, the last time being shortly after he last smoked methamphetamine with McCollum.  On this occasion, either Mather's or McCollum's tax refund was used to fund the $200 paid to Andrews for the purchase of two grams of methamphetamine.  Thereafter, Andrews was indicted by a federal grand jury and arrested.  Filing 39 (affidavit) at p. 6 ¶ 13.

- Andrews saw 20 guns and 25-30 firearms in McCollum's shop in February 2005.  Filing 39 (affidavit) at p. 6 ¶ 14.

Agent Nolte used confidential informant CI-1048 during the investigation, and all meetings and telephone calls between CI 1048 and McCollum were recorded in compliance with DOJ regulations.  Through the use of CI 1048, Special Agent Nolte obtained the following information:

- On May 19, 2005, while at McCollum's residence, CI 1048 saw 10-15 marijuana plants growing in the flower bed.  McCollum stated that although he smoked methamphetamine in the past, he now only smokes "weed" to keep from being depressed.  CI 1048 stated he saw ten rifles or shotguns in McCollum's home and shop.  The shop is a metal storage bunker located close to the residence.  Filing 39 (affidavit) at p. 6-7 ¶¶ 16-18.

- On June 19, 2005, CI 1048 saw McCollum and Mather using a pipe and bong to smoke a mixture of marijuana and a substance McCollum purchased off the internet.  McCollum stated the mixture produced a forty-five minute "high."  McCollum again said he no longer smokes methamphetamine since "smoking a joint don't send you to prison."  Filing 39 (affidavit) at p. 7-8 ¶¶ 19-20.

- The McCollum residence is a single-story, red, wood-framed home with white trim and wood deck located on the west side of the road.  A detached metal storage container bunker containing firearms is located approximately 50 to 75 yards south of the residence.

5

Upon the warrant application and affidavit of Special Agent Agent Nolte, Judge Thalken issued a warrant which commanded law enforcement to:

- search the defendant's residence, surrounding curtilage, outbuildings on the residential property, and all vehicles registered to the defendant or Wendy Mathers;

- obtain samples of the defendant's hair, blood, or urine for drug testing; and

- seize weapons, firearms, and records of sales and transfers of firearms to another person; photographs or videotapes depicting possession or use of firearms, ammunition, controlled substances, or the manufacture of controlled substances; and any controlled substances, drug paraphernalia, and substances, chemicals, devices and packaging materials used in manufacturing controlled substances.

The warrant, signed at 11:10 a.m. on June 27, 2005, required the search to be completed on or before June 30, 2005. Filing 39 at p. 11-12.

## LEGAL ANALYSIS

The defendant argues probable cause was lacking for issuance of the warrant, and that the warrant issued was overbroad. The defendant's brief argues that "other than the statements of Moore and Andrews alleging a guns for drugs transaction two years previously, there is no other evidence of any illegal conduct by the defendant." Filing 30 (defendant's brief) at p.1. He therefore claims the evidence of illegal activity set forth in Special Agent Nolte's affidavit was stale and could not be used to issue a valid warrant. For the following reasons, I conclude the defendant's motion lacks merit.

6

Sufficient probable cause for issuance of a warrant exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). In assessing the existence of probable cause, an officer "may rely upon information received through an informant. . .so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Gates, 462 U.S. at 241 (quoting Jones v. United States, 362 U.S. 257, 269 (1960)).

The court does not evaluate each piece of information independently, but considers the cumulative meaning of all of the facts to determine if probable cause exists. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002). Information provided by an outside source can be supplemented and its reliability corroborated by independent police investigation. United States v. Warner, 894 F.2d 957, 959 (8th Cir. 1990). Even when an informant has no prior record of providing information to the police, the information provided may be considered reliable if the informant's statements were against his penal interest and police were able to corroborate some of the information provided. Allen, 297 F.3d at 794 (holding that informant with no prior history of providing information to officers provided credible tip sufficient to support probable cause for a search warrant where informant admitted to assisting defendant's attempt to manufacture methamphetamine and his description of suspect's vehicle and address was corroborated by police investigation). Separate informants reporting substantially the same information may serve to corroborate each other. United States v. Jackson, 898 F.2d 79, 81 (8th Cir. 1990)(citing United States v. Warner,

7

894 F.2d 957, 960 (8th Cir. 1990)(mutually corroborative tips supplied "substantial basis" for probable cause determination)).

1.   Facial Challenge to the Warrant and Application.

As late as June 19, 2005, CI 1048 identified and correctly described McCollum's residence, stated he or she saw McCollum using marijuana, and heard him explain that he mixed the marijuana with another substance he purchased online to get "high."  One month earlier, CI 1048 saw marijuana plants and firearms at McCollum's residence and at his shop located on that residential property.  According to CI 1048, McCollum stated he had used methamphetamine in the past, but now used only marijuana.

The statements of CI 1048 were corroborated by Special Agent Nolte's independent investigation and the statements of Andrews, Moore, and Roth.  Regarding CI 1048's statements that firearms were present, Special Agent Nolte's affidavit states McCollum was a federal firearms dealer who was licensed to conduct his business at that location.  This independent investigation served to corroborate CI 1048's statement that firearms were present at the residence.  Andrews also stated that he saw firearms at the defendant's residence and shop in February 2005, and the statements of Andrews, Roth, and Moore indicate McCollum was building firearms dating back to 2003.

Andrews, Moore, and Roth each provided information through proffer interviews.  Singularly considered, the reliability of these interviews may be suspect.  However, Andrews, Moore, and Roth corroborated each other's statements.  Each independently described the date and general details of McCollum's 2003 sale of

8

a rifle to Andrews in exchange for methamphetamine and cash. Though their stories vary to some degree regarding the exact caliber of the rifle sold and the value of methamphetamine delivered, in all other respects their stories are substantially the same.

The statements of Moore, Andrews, and Roth also verify that McCollum had historically used methamphetamine, which served to corroborate CI 1048's statement that McCollum had admitted to using methamphetamine in the past.  Roth and Andrews also both stated McCollum was using methamphetamine until the time Roth and Andrews were arrested in February 2005.  Considered in the totality, Special Agent Nolte's affidavit reflects that after McCollum's methamphetamine supplier, Andrews, was arrested on a federal indictment, McCollum began using marijuana because "smoking a joint don't send you to prison."

Based on the cross-corroborated information obtained through statements provided by CI-1048, Moore, Andrews, and Roth, the totality of the warrant application and supporting affidavit reflects that beginning as far back as 2003 and until June 19, 2005, McCollum possessed firearms and was using controlled substances.  I therefore conclude the information providing the basis for the June 27, 2005 warrant was not stale.

I further conclude that based on the information presented to the magistrate judge, it was more likely than not that evidence of criminal activity would be found during a search of the defendant's residence and though obtaining blood, urine, or hair samples from his person.  The information from CI 1048 obtained in May and June of 2005 indicated McCollum was probably using marijuana while possessing firearms, and that this conduct

was occurring at his residential property--the property described in the search warrant.  Under 18 U.S.C. § 922(g)(3), an unlawful user of any controlled substance, including marijuana, cannot possess firearms.  A defendant who uses marijuana while possessing a firearm may be convicted for violating 18 U.S.C.A. § 922(g)(3).  <u>United States v. Mack</u>, 343 F.3d 929 (8th Cir. 2003).

The warrant accurately described the property to be searched and commanded officers to collect evidence of firearm possession and sales, and evidence of possession, use and manufacture of controlled substances.  Accordingly, the parameters of the search authorized by the warrant coincided with and did not exceed the suspected criminal activity under investigation.  The warrant was not overbroad.

Even assuming issuance of the warrant violated the Fourth Amendment, a judge concluded that the warrant application established a basis for finding probable cause.  The officers' reliance on the authority granted by the warrant was objectively reasonable, and the evidence is not subject to suppression under the Fourth amendment exclusionary rule.  <u>United States v. Leon</u>, 468 U.S. 897 (1984).

    2.   <u>Analysis under *Franks v. Delaware*, 438 U.S. 154 (1978)</u>.

The defendant may be arguing that Special Agent Nolte's affidavit falsely stated McCollum was a licensed firearms dealer in the warrant affidavit, and concealed the government's unsuccessful attempts to "entrap" the defendant in guns for drugs sales.  The defendant has made no showing that such statements or omissions were intentionally or recklessly made.  Moreover, even if I remove the alleged false statement, and include the

10

allegedly concealed statements in the warrant affidavit, probable cause remains for issuance of the warrant.

Irrespective of whether the defendant was a licensed federal firearms dealer, it is illegal to possess weapons while using a controlled substance.  With or without Special Agent Nolte's statement that McCollum was a licensed federal firearms dealer, CI 1048 stated guns were present at the location on May 19, 2005 and this statement was corroborated by the statements of Moore, Roth, and Andrews concerning the defendant's involvement in building guns in 2003, and particularly Andrews' statement that many guns were located on the property in February of 2005.  CI 1048's corroborated statement that guns were present supported probable cause to search the residence for those guns and associated use of controlled substances.

Moreover, although the defendant's brief argues that on May 19, 2005, and during a later contact, Andrews, acting on behalf of the government, attempted to induce McCollum to sell or repair a firearm in exchange for drugs, adding this information of alleged entrapment to the warrant affidavit does not change the probable cause analysis.  Whatever merit the entrapment defense may have at trial, it was not material to the question of whether a search warrant should be issued.  Even had the magistrate judge been informed of these alleged unsuccessful attempts to engage McCullom in guns for drugs transactions, the corroborated evidence supported probable cause to believe McCullom was violating 18 U.S.C. § 922(g)(3) by possessing firearms while using a controlled substance, and that evidence of this crime would likely be found during a search of the defendant's residential property.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. §636(b)(1)(B), that the defendant's motion to suppress, filing 29, be denied in all respects.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

IT FURTHER HEREBY IS ORDERED:  Trial is set for 9:00 a.m. on January 9, 2006 for a duration of two trial days before the Honorable Richard G. Kopf. Jury selection will be at the commencement of trial.

DATED this 28th day of November, 2005.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge